IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM HASENBERG, JR., )
and LINDA HASENBERG, )
 )
       Plaintiffs, )
 )
vs. ) Case No. 13-cv-1325-MJR-SCW
 )
AIR & LIQUID SYSTEMS CORP., et al. )
 )
       Defendants. )

## MEMORANDUM AND ORDER

REAGAN, District Judge:

    William and Linda Hasenberg filed suit in Illinois state court against 35 Defendants.  The Hasenbergs seek to recover for injuries William allegedly sustained from exposure to asbestos-containing products during his work in the United States Navy from 1968 to 1972, in a series of jobs from 1974 to 1988 (including a crane rental business and auto body repair/service shops), and on personal automotive repairs from 1973 to 2013. William alleges that the products were manufactured, sold, distributed or installed by Defendants, and this exposure resulted in him developing lung cancer.  The complaint contained six counts:

    Count I –    Negligence Count as to Manufacturers/Suppliers
    Count II –   "Willful and Wanton as to Manufacturers/Suppliers"
    Count III --  Conspiracy (against Defendants Metropolitan Life Insurance,
                   Honeywell, International, and Pneumo Abex LLC)
    Count IV --  Negligent Spoliation of Evidence as to Manufacturers/Suppliers
    Count V –   Willful and Wanton Spoliation as to Manufacturers/Suppliers
    Count VI –  Loss of Consortium.

One named Defendant, Crane Co. (Crane)[1], removed the case to this District Court, based on 28 U.S.C. 1442(a)(1), the federal officer removal statute. On threshold review of the case, the undersigned ordered the Hasenbergs (Plaintiffs) to address subject matter jurisdiction. Various Defendants entered, answered, and filed motions in response to the complaint. Three Defendants (Georgia Pacific, LLC, Ingersoll-Rand Company, and Trane US, Inc.) filed a motion to dismiss or for more definite statement (Doc. 12). In their February 10, 2014 response to that motion, Plaintiffs addressed subject matter jurisdiction – asserting that Crane has not satisfied its burden (as the party seeking the federal forum) of establishing subject matter jurisdiction. Plaintiffs ask this Court to remand the case to Madison County (Illinois) Circuit Court.

For the reasons stated below, the undersigned denies that request, having concluded that this Court enjoys subject matter jurisdiction. 28 U.S.C. 1442(a)(1) permits a defendant to remove to federal court a lawsuit filed in state court against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States …, sued in an official or individual capacity for any act under color of such office." The federal officer removal provision is an exception to the well-pleaded complaint rule, which provides that for a non-diversity case to be removable, the complaint itself (not a defense) must establish that the case arises under federal law. *Rodas v. Seidlin*, 656 F.3d 610, 616-17 (7th Cir. 2011).

---

[1] Another named Defendant is John Crane, Inc. The reference in this Order to "Crane" means removing Defendant Crane Co. – not John Crane, Inc. (referred to herein as "JCI").

The Supreme Court of the United States has made clear that the statute must be "liberally construed." *Watson v. Philip Morris Companies, Inc.,* **551 U.S. 142, 147 (2007).** The basic purpose of the statute is to protect the federal government from the interference with its operations which would ensue if a state were able to try federal officers and agents for alleged offenses committed while acting within the scope of their authority. *Watson,* **551 U.S. at 150.** The statute addressed the concern that state court proceedings might reflect "local prejudice" or hostility against unpopular federal laws or federal officials. *Id., citing Maryland v. Soper* **(No. 1), 270 U.S. 9, 32 (1926).** The statute also was intended to ensure that the validity of any defense of official immunity is tried in a federal court. *Rodas,* **656 F.3d at 617;** *Willingham v. Morgan,* **395 U.S. 402, 407 (1969).** *See also International Primate Protection League v. Administrators of Tulane Educational Fund,* **500 U.S. 72, 86-87 (1991)**.

The mere fact that a private firm must comply with detailed federal regulations is not sufficient to support federal officer removal. "A private firm's compliance … with federal laws, rules, and regulations does not by itself fall within the scope of 'acting under' a federal 'official.'" *Watson,* **551 U.S. at 153.** But when an intensely-regulated private contractor helps the federal government produce an item the government needs, the assistance being provided to the federal officers "goes beyond simple compliance with the law and helps [the federal] officers fulfill other basic governmental tasks." *Id.* So, Philip Morris's compliance with regulatory laws and rules of the Federal Trade Commission was not enough to support federal officer removal, whereas Dow Chemical's contract to provide the federal government with a

product with war-time uses ("Agent Orange") was sufficient to support federal officer removal in a suit brought by a nurse allegedly injured by her exposure to the product. *Watson,* **551 U.S. at 153-54.**

In 2012, the United States Court of Appeals for the Seventh Circuit reversed a district court's remand order after finding that the contractor defendant had satisfied the elements of federal officer removal in a case involving asbestos exposure allegedly causing mesothelioma. In *Ruppel v. CBS Corp.,* **701 F.3d 1176 (7th Cir. 2012),** the Court rejected the argument that removal under the statute was "narrow" or "limited," and clarified that the statute has four requirements. The removing defendant must show that it was a (1) "person" (2) "acting under" the United States, it agencies or its officers, (3) that has been sued "for or relating to any act under color of such office," and (4) has a colorable federal defense to the plaintiff's claim. *Ruppel,* **701 F.3d at 1180-81,** *citing* **28 U.S.C. 1442(a), and** *Mesa v. California,* **489 U.S. 121, 124-135 (1989).**

Plaintiffs concede that Crane has satisfied the first of the four elements needed to support the exercise of federal officer jurisdiction – that Crane is a **person** under the statute (Doc. 78, p. 3). The Court finds that Crane has met the second through fourth requirements as well.

The second requirement (that the injury occur while the defendant is "acting under" a federal officer) is to be liberally construed by courts. *Watson,* **551 U.S. at 147;** *Ruppel,* **701 F.3d at 1181.** The record before this Court (including affidavits and exhibits attached to Doc. 3) reveals that, at the time of the allegedly tortious conduct, Crane Co. was **acting under** the direction of the U.S. Navy within the meaning of § 1442(a)(1) in

designing, manufacturing and supplying/selling its products for and to the Navy. The products (which were installed aboard Navy vessels) were designed and manufactured pursuant to precise contracts and detailed specifications approved by the Navy.

Crane also has met the third requirement – that a **causal connection** exists between the conduct complained of and the assertion of official authority (i.e., that Crane was acting under the color of federal authority). Here, Plaintiffs' claims against Crane rest on the actions taken by Crane in following the directives of the Navy. Plaintiffs appear to argue that Crane fails this element because while there may be a causal nexus between Crane's actions and Plaintiff's use-of-asbestos claims, there is no such nexus between Crane's actions and Plaintiff's failure-to-warn claims. The Court is unpersuaded. Federal officer removal was found to be proper in *Ruppel*, wherein the plaintiffs' complaint contained both use-of-asbestos and failure-to-warn claims.

Finally, Crane's government contractor defense supplies the **colorable federal defense** which is the fourth requirement for federal officer removal. The government contractor defense derives from the government's immunity to suits when the performance of a discretionary function (e.g., selecting the appropriate design of military equipment) is at issue. ***Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 998 (7th Cir. 1996),** *cert. denied,* **520 U.S. 1116 (1997).** The defense, under certain circumstances, shields government contractors from state tort liability for products the contractors manufacture for the United States Armed Forces. *Id.*

The government contractor defense applies when (a) the United States approved reasonably precise specifications, (b) the product (or equipment) conformed to those

specifications, and (c) the supplier warned the United States about the dangers in the use of the product (or equipment) which were known to the supplier but not to the United States. *Id.*, **96 F.3d at 997-98**, *citing Boyle v. United Technologies Corp.*, **487 U.S. 500, 512 (1988).**

Here, Crane has furnished evidence (see, e.g., Affidavits of David P. Sargent and Samuel A. Forman, attached to Doc. 3) that the Navy gave Crane precise specifications regarding its products, that Crane delivered products conforming to those specifications, and that the Navy possessed as much or more knowledge of the hazards of asbestos as Crane had. Crane has a colorable defense based on federal law. As the Seventh Circuit pointed out in *Ruppel*, **701 F.3d at 1182**, the validity of Crane's defense may be hotly contested and may present complex issues, "but the propriety of removal does not depend on answers" to those questions; rather "the claimed defense need only be 'plausible.'"

For all these reasons, the undersigned concludes that federal officer removal was proper, and the Court enjoys subject matter jurisdiction. Having determined that jurisdiction is secure, the undersigned turns to the pending dismissal motions. On February 19, 2014, Defendant John Crane, Inc. (JCI) moved to dismiss or for more definite statements as to Count IV and V -- the negligent and willful/wanton spoliation of evidence claims -- for failure to state a claim upon which relief can be granted. Plaintiffs then moved to voluntarily dismiss those claims as to JCI without prejudice, under Federal Rule of Civil Procedure 41(a)(2).

On March 25, 2014, the Court set an April 4, 2014 deadline for JCI to file any objection to the motion for partial voluntary dismissal without prejudice (see Doc. 121). That deadline passed without any objection or other response filed. Accordingly, the Court **GRANTS** Plaintiff's Rule 41 motion for voluntary dismissal (Doc. 119) and **DISMISSES without prejudice Plaintiff's claims (contained in Counts IV and V) against Defendant JCI.** The Court notes (1) those counts still remain as to other named Defendants; and (2) Plaintiffs' voluntary dismissal of these claims does *not* dispose of all claims against JCI (or any counterclaims filed by JCI). The dismissal of these claims against JCI **RENDERS MOOT** JCI's motion to dismiss (Doc. 88).

Via prior dismissal stipulations and this Order, Plaintiffs have voluntarily dismissed certain claims contained in certain counts against certain Defendants, including some (but not all) of Plaintiffs' claims as to Defendants Georgia-Pacific, LLC, Ingersoll-Rand Company**,** Trane U.S., Inc., Continental Teves, Inc., Flowserve Corporation, Cummins, Inc., Gardner Denver, Inc., Foster Wheeler Energy Corporation, Warren Pumps, LLC, Air & Liquid Systems Corporation, Certainteed Corporation, and John Crane, Inc.

This case originated in state court, where it is common to label counts with such titles as "Willful and Wanton as to Manufacturers/Suppliers of Asbestos Products." Although not technically improper, this is quite unhelpful in a case with three dozen defendants, for the record is unclear as to precisely which Defendant(s) which counts are directed against, unless one knows who is a manufacturer, who is a supplier, and who is both. Additionally, the dismissal of certain Defendants from Counts IV and V

has muddied the record even further (i.e., now a count directed against all suppliers is truly only directed against *some* suppliers). In short, the operative complaint does not disclose which Defendants are sued in which counts. This should be rectified.

The Court hereby **DISMISSES without prejudice** Plaintiffs' complaint and **DIRECTS** Plaintiffs to file a First Amended Complaint which plainly identifies *by name* (e.g., Union Carbide Corporation) every Defendant sued in each count. The First Amended Complaint **shall be filed by May 9, 2014**.

One motion remains pending before the undersigned -- a motion to dismiss for lack of personal jurisdiction filed by Defendant Whittaker, Clark & Daniels, Inc. (Doc. 64).[2] The dismissal of Plaintiffs' complaint **RENDERS MOOT** this dismissal motion directed at the original complaint. But two points regarding personal jurisdiction bear mention at this juncture.

First, a note is warranted as to the procedural standard governing this Court's review. The parties cite Illinois cases for concepts such as what must be pled in a complaint (Doc. 64, p. 3). Of course, this Court applies federal pleading standards, not Illinois pleading standards. And as the Seventh Circuit explained in *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781-82 (7th Cir. 2003):

> In the federal courts, the judicial approach to considering a question of personal jurisdiction is well-established. "[A] complaint need not include facts alleging personal jurisdiction…." However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure

---

[2] As of the date this Order was drafted, three additional motions were pending before Magistrate Judge Stephen C. Williams (Docs. 108, 122, and 126), some of which may be rendered moot by the entry of this Order dismissing the current complaint.

12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.

The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held. When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).… However, when the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, … the plaintiff "need only make out a *prima facie* case of personal jurisdiction." See *Hyatt*, 308 F.3d at 713.…

Since WCD has moved for Rule 12(b)(2) dismissal and an evidentiary hearing was not held, the question before this Court would be whether Plaintiffs have established personal jurisdiction by a preponderance of the evidence. As a court assesses whether a plaintiff has discharged his burden, the plaintiff is entitled to the resolution in his favor of factual disputes in the supporting materials. **Purdue Research, 338 F.3d at 782-83.** Here, the dismissal of the complaint has mooted WCD's January 20, 2014 Rule 12(b)(2) motion, but the Court anticipates that if Plaintiffs name WCD as a Defendant in the First Amended Complaint, WCD will file a fresh motion under Rule 12(b)(2). Which leads to the second point bearing note – the substantive legal standards governing personal jurisdiction in federal court.³

Personal jurisdiction is a court's "power to bring a person into its adjudicative process." **Northern Grain Marketing, LLC v. Greving, 743 F.3d 487, 490 (7th Cir. 2014).**

---

³ Here, too, the briefs cite Illinois not federal caselaw for several key principles to the personal jurisdiction analysis (see, e.g., Doc. 64, pp. 3-5, p. 7; Doc. 93, pp. 3-4). So the Court sets forth the general framework guiding analysis of personal jurisdiction in federal court.

Due process constrains when a state can exercise personal jurisdiction over a nonresident defendant.  *Jennings v. AC Hydraulic A/S*, **383 F.3d 546, 549 (7th Cir. 2004)**, *citing Asahi Metal Indus. Co. v. Superior Court of California*, **480 U.S. 102, 108 (1987)**. This allows potential defendants to structure their contacts with different states to allow (or avoid) being rendered liable to suits filed, and bound by a judgments issued, in those states.  *Id.*

In a case where subject matter jurisdiction rests on a federal question, the federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the federal court sits (here, Illinois) authorizes service of process on that defendant.  *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, **623 F.3d 440, 443 (7th Cir. 2010)**, *citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co, Ltd.*, **484 U.S. 97, 104-05 (1987)(federal court looks to federal statute or state long-arm statute to determine defendant's amenability to service, which is the prerequisite to exercise of personal jurisdiction).**

The Illinois long-arm statute permits the exercise of personal jurisdiction if it would be allowed under either the Illinois constitution or the United States constitution. *Mobile Anesth.*, **623 F.3d at 443**, *citing* **735 ILCS 5/2-209(c)**. The Seventh Circuit has held that "there is no operative difference between these two constitutional limits." *Id.*, *citing Tamburo v. Dworkin,* **601 F.3d 693, 700 (7th Cir.),** *cert. denied,* **131 S. Ct. 567 (2010).** *See also uBID, Inc. v. GoDaddy Group, Inc.,* **623 F.3d 421, 425 (7th Cir. 2010) ("Because Illinois permits personal jurisdiction if it would be authorized by either**

**the Illinois or the United States Constitution, the state statutory and federal constitutional requirements merge.").**

Additionally, personal jurisdiction can be either general or specific, depending on the extent of the defendant's contacts with the forum state. *uBID*, **623 F.3d at 425.** If the defendant's contacts with the forum state are extensive, systematic and ongoing, then he can be sued in the forum state for *any* cause of action, even if the action is unrelated to those contacts. *Id.; Northern Grain*, **743 F.3d at 492.** *See also Snodgrass v. Berklee College of Music,* **-- Fed. Appx. --, 2014 WL 960898 (7th Cir. March 13, 2014)** **("General jurisdiction over an out-of-state corporation may be appropriate when its affiliations with the forum state are so continuous and systematic as to render the corporation essentially at home in that state.").**

On the other hand, if the defendant has only limited contacts with the state, then the plaintiff must show that his claims *arise out of* the defendant's constitutionally sufficient contacts with the state, i.e., the defendant's contacts with the forum state "directly relate to the challenged conduct or transaction." *uBID*, **623 F.3d at 425;** *Tamburo,* **601 F.3d at 702**, *citing GCIU-Employer Retirement Fund v. Goldfarb Corp.*, **565 F.3d 1018, 1024 (7th Cir. 2009).**

In either case, the ultimate constitutional query is whether the defendant had certain minimum contacts such that maintenance of the suit in that state does not offend "traditional notions of fair play and substantial justice." *uBID*, **623 F.3d at 425**, *quoting Int'l Shoe Co. of State of Wash., Office of Unemployment Compensation and*

*Placement*, **326 U.S. 310, 316 (1945).** *See also Jennings*, **383 F.3d at 549.**[4] For now, application of these principles is premature, because it remains to be seen if Plaintiff will include WCD as a Defendant in the First Amended Complaint.

Accordingly, for the reasons stated above, the Court **CONCLUDES** that federal officer removal was proper; **DENIES** Plaintiffs' remand motion (Doc. 78, p. 12); **GRANTS** Plaintiff's Rule 41 motion for voluntary dismissal (Doc. 119) and **DISMISSES** without prejudice Plaintiff's claims (contained in Counts IV and V) against Defendant JCI; **FINDS MOOT** JCI's motion to dismiss (Doc. 88); **DIRECTS** Plaintiffs by May 9, 2014 to file a First Amended Complaint which plainly identifies *by name* (not category) every Defendant sued in each count; and **FINDS MOOT** WCD's motion to dismiss complaint for lack of personal jurisdiction (Doc. 64).

IT IS SO ORDERED.

DATED April 9, 2014.

                                                      *s/ Michael J. Reagan*
                                                      Michael J. Reagan
                                                      United States District Judge

---

[4] In the instant case, Plaintiffs contend that Defendant WCD *should be considered* a nonresident defendant who is "doing business within" Illinois, and thus subject to personal jurisdiction here under the Illinois long-arm statute. WCD contends that there is no basis whatsoever for this Court to exercise general or specific personal jurisdiction over WCD in Illinois, because WCD is a New Jersey corporation with a Connecticut principal place of business, WCD owns no property in Illinois, WCD has no offices in Illinois, WCD has no employees in Illinois, WCD has no registered agent in Illinois, and Plaintiffs have not even alleged that the claimed injuries arose from contacts with WCD within Illinois.